**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | | |
| | **Plaintiff,** | **Case No. 3:20-CR-05** |
| **v.** | | |
| **LEROY HENRY, JR.,** | | |
| | **Defendant.** | |

**UNITED STATES' MOTION FOR RECONSIDERATION OF**
**COURT'S RULING TO EXCLUDE TESTIMONY**

COMES NOW, the United States of America, by and through Gretchen C.F. Shappert, United States Attorney for the District of the Virgin Islands, and Meredith J. Edwards, Assistant United States Attorney, and hereby files this Request to for Reconsideration of Court's Ruling to Exclude Testimony. As explained below, the Court improperly excluded the testimony of FBI Forensic Analyst, Jaclyn Garfinkle, pursuant to *Crawford* and the 6th Amendment right to confront witnesses. *Crawford* is not triggered when the United States specifically seeks to introduce expert testimony of the only witness qualified to analyze the empirical data collected for DNA testing.

**BACKGROUND**

On May 4, 2021, as the United States called its final witness to testify in the above-captioned matter, the defense counsel requested a side bar conference to advise the Court that she wanted to voir dire the witness on her suitability to present testimony in this case. On questioning, the defense counsel elicited from the witness that she did not perform the extractions or the laboratory work which led to her analysis and formed the basis of her expert opinion. Counsel for the defense provided the Court with a four-page Motion citing the 6th Amendment, *Crawford v.*

1

*Washington* and its progeny, and *Melendez-Diaz v. Ohio*, in support of its assertion that Ms. Garfinkle's testimony is inadmissible.

### *CRAWFORD* DOES NOT STAND TO EXCLUDE MS. GARFINKEL'S TESTIMONY

Contrary to assertions made by defense counsel, *Crawford* does not stand to prevent the testimony of Ms. Garfinkel. While *Crawford* examines the 6th Amendment Confrontation Clause as it applies to tow fundamental principles: (1) the prohibition of *ex parte* examinations or statements against an accused, and (2) the admission of testimonial statements of witnesses of witnesses whom are unavailable and the defendant did not have the opportunity to cross-examine that witness. *Crawford v. Washington*, 541 U.S. 36, 50-54 (2004).

In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause barred the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination." Since *Crawford*, the Supreme Court has addressed expert testimony and scientific evidence in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), *Bullcoming v. New Mexico*, 131 S. Ct, 2705 (2011), and *Williams v. Illinois*, 132 S. Ct. 2221 (2012). In *Melendez-Diaz* and *Bullcoming*, a testimonial statement, in the form of a report, was admitted in evidence.

In each case, a testimonial statement was admitted in evidence. However, *Crawford* forbids the introduction of testimonial hearsay as evidence in itself, but it in no way prevents expert witnesses from offering their independent judgments merely because those judgments were in some part informed by their exposure to otherwise inadmissible evidence. *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009). See also *United States v. Tolliver*, 451 F. App'x 97, 105 (3d Cir. 2011) (stating that the expert "was not simply parroting witnesses' out-of-court

2

testimonial statements, but rather applying his own expertise to answer the questions posed to him by counsel") (citing *Johnson* and holding no *Crawford* violation).

In *United States v. Summers*, 666 F.3d 192 (4th Cir. 2011), an analyst who performed DNA testing on a jacket, and recorded the results thereof, did not testify at trial. Instead, a second DNA expert, Brendan Shea, testified at trial. Shea, who was the testing analyst's supervisor, prepared his own report, which included a table that illustrated the results of the testing that had been done by his subordinate. The Fourth Circuit perceived "little difficulty with the admission of Shea's testimony, given the predominance therein of his independent, subjective opinion and judgment relative to the lesser emphasis accorded the objective raw data generated by" his subordinate. Summers, 666 F.3d at 201.  The admission of Shea's report, however, because it contained "a table detailing . . . [the] results" of the DNA testing done by Shea's subordinate, gave the Court "pause." The admission of the report, the Court found, in affirming the defendant's conviction, "presented an unnecessary risk that the jury would improperly evaluate the DNA evidence based on its lay perceptions of what the data meant rather than on Shea's expertise and any potential inaccuracies in his conclusions that might be developed on cross examination." *Id.* (citing Fed. R. Evid. 703). In this case, the United States has not, and will not proceed, in a manner that would give rise to such a risk, as the examiner will only be testifying about her analysis of the objective raw data generated by the biologists/technicians and mechanical equipment.

## THIS CASE IS EASILY DISTINGUISHABLE FROM *MELENDEZ-DIAZ* AND *BULLCOMING*

The defense improperly analogizes this case to *Melendez*-Diaz, a case where the prosecution substituted in-court testimony of forensic experts with "certificates of analysis" attesting to the weight and concentration of the seized cocaine. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 308 (2009). In citing *Crawford*, the Court held that the certificates were testimonial

3

in nature and, pursuant to the Confrontation Clause of the 6th Amendment, they could not serve as substitutes for live witnesses. *Melendez-Diaz*, at 311-12. In the case at bar, the government is offering the testimony of the only analyst who performed analysis to reach an opinion as to the DNA comparison. Where defense counsel may be confusing the issue is in her improper characterization of the "preparation of the DNA samples" as analysis. Although there were multiple steps taken in the preparation of the samples for analysis, an argument perhaps more appropriately characterized in terms of chain of custody (which simply goes to the weight accorded to the evidence), there was no analysis conducted until the final step. And that analysis was conducted my Ms. Garfinkel.

In *Bullcoming v. New Mexico*, 564 U.S. 647, 650 (2011), the government introduced "substitute" expert testimony and permitted a toxicology report to come into evidence (despite being testimonial) because it was a business record and the analysist was merely a "scrivener." The case at bar does not involve a "substitute" analyst. Ms. Garfinkel is the author of the forensic analysis that the DNA samples matched. Furthermore, the United States is not attempting to introduce her written report in lieu of her live testimony.

### THE TESTIMONY OF THE LABORATORY PERSONNEL (BIOLOGISTS AND TECHNICIANS) WHO PREPARED THE DNA SAMPLE FOR ANALYSIS IS NOT TESTIMONIAL

The laboratory personnel performing the preliminary procedures (biologists/technicians) to prepare the sample for analysis are not qualified to provide analysis of the raw data. That is the job of the analyst, or in this case, Ms. Garfinkel. In order to properly understand why the procedures performed by lab personnel are not testimonial in nature, and conversely, why Ms. Garfinkel's testimony is the only proper testimony to put before the Court, one must know the

procedures that go into preparing a sample for DNA analysis. The defense counsel improperly characterizes the biologists and technicians as "analysts", as the perform no analysis.

In preparing a sample for DNA analysis, the sample goes through a five-step process, where the final step (step five) is the analysis of raw data (performed by the forensic examiner exclusively). It should be noted that these four steps (extraction, quantification, amplification, and separation) involve no analysis and they are merely procedures to prepare the samples for final analysis and are performed by robots (machines) with some interaction or preparation by the lab biologist/technician, who is simply performing perfunctory and procedural steps in compliance with laboratory protocol.

The first step involves the extraction of the DNA sample. In the case of a known sample, or a buccal swab, or an unknown sample (like a swab taken from a gun), the process is the same. Extraction itself is broken into three phases, which includes lysis, precipitation, and purification. In these three steps, DNA is extracted from the cell nucleus, cleansed from the other cellular debris/materials, and then dissolved in water to exist in a liquid state. In this step, there is no analysis conducted, there are no reports generated, and there are no extrapolations made from data.

In the next step, quantification, the small samples of the liquid extractions are measured for the quantity contained in each of the respective samples. This process is frequently done using a spectrometer, which measures the absorption/transmission of light through a liquid in order to determine the concentration of DNA. Based on the respective concentration of DNA in the respective liquid suspension, the technician/biologist prepares the sample for the next phase, amplification. Again, in this step, there is no analysis conducted, there are no reports generated, and there are no extrapolations made from data.

Amplification (also known as Polymerase Chain Reaction (PCR) Amplification) is the process in which unique strands of DNA are isolated using a thermocycler and then replicated ("amplified") by making millions of copies of the isolated unique strands of DNA. Again, this procedure is performed by a machine there is no analysis conducted, there are no reports generated, and there are no extrapolations made from data.

The last step before the analytical phase is separation. Separation is conducted using capillary electrophoresis, which essentially separates the individual DNA strands based on their size for analysis. This final step produces raw data of the DNA strands that can be analyzed for comparison. Again, up until this point, there is no analysis conducted, there are no reports generated, and there are no extrapolations made from data, and the samples are simply being moved through the processing on order to produce data for analysis.

The final step, analysis occurs only when the raw data is compiled from the separated samples. The forensic analyst receives the **raw data** and can begin the process of comparison in order to compile his or her results, and ultimately, opinion.

In *Williams v. Illinois*, 567 U.S. 50 (2012), an expert's testimony referred to a DNA profile from a report produced from an outside laboratory. an expert witness from the Illinois State Police Laboratory testimony referring to a DNA profile as having been produced from semen found on a victim did not violate the Confrontation Clause. There, the Illinois State Police had sent an independent lab, Cellmark, a vaginal swab, directing it to conduct DNA analysis. Cellmark returned the vaginal swab and a report containing the DNA analysis. The expert witness testified that the DNA profile generated by Cellmark using the sample it collected from the vaginal swab matched the defendant's DNA profile, which was generated from the state's forensic database. Despite not having any first-hand knowledge of how Cellmark had handled the vaginal swab; what

6

tests were actually run on the swab or the manner in which the tests were conducted, the expert was permitted to testify that DNA taken from the vaginal swab matched to a reasonable degree of medical certainty the defendant's DNA.

The plurality opinion in *Williams* found that there was no Confrontation Clause violation because the statements from the Cellmark report were not being used for the truth of the matter asserted; rather, the statements from the Cellmark report were used as a premise from which the expert was able to arrive at her opinion. *Williams*, 567 U.S. at 63-78. In his concurring opinion, Justice Thomas concluded that there was no Confrontation Clause violation because the statements at issue, while being admitted for the truth of the matter asserted, lacked the formality and solemnity associated with testimonial evidence. *See Williams*, 567 U.S. at 103-04

As the Third Circuit recently noted in *United States v. Walker*, 990 F.3d 316, 322 (3d Cir. 2021), "[t]here is no consensus concerning the proper bounds of the Confrontation Clause when multiple people collaborate to make a testimonial statement." The United States submits, however, that the Circuits that have addressed similar circumstances to the ones presented here – namely, an expert's use of raw data generated by other lab technicians by subjecting material to different processes – support that such testimony is proper. In *United States v. Shanton*, 513 F. App'x 265 (4th Cir. 2013), a defendant convicted of armed bank robbery and related firearms offenses unsuccessfully argued on appeal that the trial court wrongly admitted a DNA expert's testimony in purported violation of his Confrontation Clause rights since technicians who performed the laboratory testing were not available for cross-examination. But the court found no constitutional impropriety since the raw data serving as the basis for the DNA expert's opinion was not testimonial under Justice Thomas's test set out in *Williams* and, under the plurality's test in *Williams*, the statements were not admitted for the truth of the matter asserted. The court

emphasized that the government did not introduce the expert witness' report into evidence, nor was there any testimony on direct examination regarding the actual raw data the expert used to reach her opinion. Accordingly, it affirmed the defendant's convictions and sentence. The same reasoning should apply here—the DNA expert's opinion is based on the raw data that, under Justice Thomas's test in Williams is not testimonial and, under the plurality test in Williams, the "statements" are not being admitted for the truth of the matter asserted. *See United States v. Turner*, 709 F.3d 1187 (7th Cir. 2013) (an expert who testifies about the nature of a suspected controlled substance may rely on information gathered and produced by an analyst who does not himself testify—the information on which the expert bases his opinion need not itself be admissible in order for the expert to testify).

**THE TESTIMONY OF THE FORENSIC ANALYST WHO ANALYZED THE DATA IS ONLY THE PROPER WITNESS**

Only once the previous four procedures are conducted, does the forensic analyst receive data from the procedures conducted on the DNA samples. The defense has used the misnomer "tests" in referring to these procedures to suggest improperly that there are actually "results" produced that require analysis. The procedural steps that occur prior to DNA analysis and comparison are merely perfunctory in nature – more akin to the handling that occurs with any piece of evidence until it arrives back in the hands of the seizing agents. Contesting the laboratory procedures should no be analogous to a *Crawford* analysis, but should be more closely framed as a chain-of-custody issue. And chain of custody does not bear on the admissibility of the evidence, but instead on the weight that that piece of evidence should be afforded.[1]

---

[1] Serious gaps may render a chain of custody so deficient that exclusion of evidence is required, but ordinarily, gaps in the chain go to the weight of the evidence, not its admissibility. *United States v. Rawlins*, 606 F.3d 73, 82-82; *see also Melendez-Diaz v. Massachusetts* , 557 U.S. 305 (2009) (holding that ordinary case gaps in the chain of custody go to the weight of the evidence

8

**CONCLUSION**

The testimony of the FBI Forensics Analyst, Ms. Jaclyn Garfinkel does not violate the defendant's 6th Amendment Constitutional right under *Crawford* its progeny. It is neither "substitute" testimony of another analyst, nor is it a compilation of testimonial statements made by out of court declarant.

Wherefore, the United States respectfully requests that the Court reconsider its exclusion of the testimony of Ms. Garfinkel and allow her to testify. Due to time constraints, the United States respectfully requests to submit additional caselaw in its oral presentation in tomorrow's hearing.


Dated: May 5, 2021                    GRETCHEN C.F. SHAPPERT
                                      U.S. ATTORNEY

                              By:     s/ G. A. Massucco-LaTaif
                                      G. A. Massucco-LaTaif
                                      Assistant United States Attorney
                                      5500 Veteran's Drive, Suite 260
                                      St. Thomas, VI 00802
                                      (340) 715-9416
                                      (340) 776-3474 (fax)
                                      george.a.massucco@usdoj.gov

not its admissibility).

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of April, 2021, I electronically filed the foregoing *UNITED STATES' REPLY TO DEFENDANT'S RESPONSE TO UNITED STATES' CONSOLIDATED MOTIONS IN LIMINE [ECF No. 77]* with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties of record.

By:    <u>s/ G. A. Massucco-LaTaif</u>
           G. A. Massucco-LaTaif
           Assistant United States Attorney
           5500 Veteran's Drive, Suite 260
           St. Thomas, VI 00802
           george.a.massucco@usdoj.gov