**IN THE DISTRICT COURT OF THE VIRGIN**

**ISLANDS DIVISION OF ST. THOMAS AND ST.JOHN**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 2020-5 |
| | ) | |
| v. | ) | |
| | ) | |
| LEROY HENRY, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPPOSITION TO GOVERNMENT'S MOTION FOR RECONSIDERATION**

Defendant LEROY HENRY, Jr., by and through his attorney, Melanie Lark Turnbull, Assistant Federal Public Defender, hereby files this response in opposition to the government's motion for reconsideration (ECF No. 91).

### I.    Introduction

The government faces a problem of its own making—it failed to recognize Confrontation Clause and hearsay problems in the DNA portion of its case. Because it failed to recognize these problems, the government chose to offer only a single witness to testify regarding DNA. Having now been confronted with the Confrontation Clause and hearsay problems, the government seeks to avoid consequence by presenting a false choice between calling either Jaclyn Garfinkle, or the laboratory personnel who performed the procedures leading to the profiling. The government then posits that Garfinkle's testimony is preferable to that of the personnel who performed the other procedures. But again, that is a false choice. The solution to the problem is that the government should have arranged to have *both* the personnel who performed the procedures in the laboratory *as well as* Garfinkle testify.

1

Had it done so, there would be no Confrontation Clause and hearsay problems. But because the government did not do so, and cannot make those other witnesses available (ECF No. 90) despite the Court's granting of a continuance, the District Court correctly excluded Garfinkle's testimony and the government's motion for reconsideration must be denied.

II.     **The government's motion demonstrates the necessity of laboratory personnel testimony, and the irrelevance of Garfinkle's testimony without it**

In an effort to downplay the import of the witnesses the government has failed to make available, the government refers to them as "laboratory personnel" and "biologists/technicians" who perform "preliminary procedures". (ECF No. 91 at 4). In fact, these critical witnesses performed the most important tasks which must be put before the jury and subjected to cross-examination if Mr. Henry is to receive a fair trial.

As an initial matter, the government ignores important steps when it outlines the "five-step process" in DNA analysis. (ECF No. 91 at 5-10). The laboratory personnel actually received the evidence in this case. Based on discovery, it appears that the buccal swabs taken from Mr. Henry were shipped to the laboratory together with the firearm purportedly possessed by Mr. Henry. This fact raises important questions: How were the swabs and firearm packaged? Were they in the same package? Was there an opportunity for cross-contamination? Garfinkle cannot answer any of these questions—she wasn't present at that time and has no personal knowledge.

The government also ignores the work station conditions and procedures that the extraction of DNA samples occurred in. (*See* ECF No. 91 at 5). Discovery indicates that the extraction of DNA samples from the buccal swabs and firearm was performed by the same personnel on the same day, and very close in time. More questions are raised: were the buccal swabs present at the work station at the same time as the firearm? How close were they to one another? Was the work station adequately

cleaned and sanitized in between extractions? What measures were employed to prevent cross-contamination? Once again, Garfinkle cannot answer any of these questions—she wasn't present at that time and has no personal knowledge.

In outlining the "five-step process" of DNA analysis, the government downplays the importance of the first four steps, opining that they "involve no analysis" and are "merely procedures to prepare the samples for final analysis." (ECF No. 91 at 5). The government cites no precedent establishing that only "analysis" or "final analysis" steps are subject to a Confrontation Clause analysis. Moreover, the government tries to minimize the importance of laboratory personnel, describing their tasks as "performing perfunctory and procedural steps **in compliance with laboratory protocol**." (ECF No. 91 at 5 (emphasis added)). The problem is that neither the Court nor the jury can be confident that these steps were taken in compliance with laboratory protocol based on Garfinkle's testimony—she wasn't there, and has no personnel knowledge. If personnel did not perform their critical tasks "in compliance with laboratory protocol," then Garfinkle's "final analysis" is worthless. *See Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 318-19 (2009) ("Confrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well. Serious deficiencies have been found in the forensic evidence used in criminal trials.").

In discussing each step, the government repeatedly notes that there is no analysis conducted, and no extrapolations made from data. (ECF No. 91 at 5, 6). Once again, no precedent is cited demonstrating that analysis or extrapolations are necessary precursors to Confrontation Clause challenges. It is also noteworthy that what the government describes as a five-step process is perhaps more accurately described as a seven-step process, since extraction involves lysis, precipitation and purification. (ECF No. 91 at 5). And the government proposes to largely ignore the first six steps, and call Garfinkle to testify only about the seventh step.

The government also seeks to minimize the role of humans and stresses the automatic and robotic work done, in order to lessen the import of laboratory personnel as witnesses. The Supreme Court has foreclosed such efforts. *Bullcoming v. New Mexico,* 131 S.Ct. 2705 (2011) rejected the argument that Bullcoming's "true accuser" was the gas chromatagraph machine that generated the blood alcohol content figure and that the analyst's role was that of a "mere scrivener." *Id.* at 2714.

The problem with the government's proposed testimony is perhaps best captured by the adage, "garbage in, garbage out." In essence, the government seeks to have Garfinkle testify regarding the random match probability between (1) the profile generated from the DNA extracted from the buccal swab, and (2) the profile generated from the DNA extracted from the firearm. The problem with this testimony is that Garfinkle's testimony is only helpful to the jury under Fed.R.Evid. 702(a) if the two profiles Garfinkle is comparing were properly collected and processed according to the first seven steps of the analysis. If, on the other hand, cross-contamination occurred somewhere in the process as discussed herein, then the profiles are worthless. *Bullcoming* explained that a surrogate witness who was merely knowledgeable about the equipment and protocol used in administering the test was ill-equipped to "convey what [the certifying analyst] knew or observed about the events his certification concerned, *i.e.,* the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part." *Id.* at 2715. And if the profiles are worthless, then Garfinkle's testimony is not only worthless—it is misleading and falsely inculpatory. Once again, the problem is that Garfinkle was not present and has no personal knowledge about the first seven steps the government outlines, to say nothing of the receipt of the evidence, how it was packages, etc.

In *Bullcoming v. New Mexico,* 131 S.Ct. 2705 (2011), the Supreme Court held that the Confrontation Clause does not permit the prosecution to introduce a forensic laboratory report

containing a testimonial statement, made in anticipation of a criminal trial, through the in-court testimony of a surrogate expert who did not personally perform or observe the laboratory test. *Id.* at 2710. *Bullcoming* affirmed the accused's right is to be confronted with the analyst who performed the scientific test relied on against the accused at trial, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular analyst. *Id.* at 2707-08. Here, the government claims that a report from laboratory personnel will not be entered into evidence. But that is a distinction without a difference. As was the case in *Turner*, the government seeks to introduce the results of laboratory personnel's work through an expert witness, Garfinkle, who will vouch for the reliability of that work "notwithstanding the fact that [she] did not participate in the handling and analysis of the substances and thus ha[s] no direct knowledge of what [laboratory personnel] did or did not do." *Turners, supra,* 709 F.3d at 1192.

Without underlying testimony from the laboratory personnel who received and handled the DNA evidence while generating the data used by Garfinkle, Garfinkle's testimony amounts to the following:

> I compared this profile of unknown origin with that profile of unknown origin and the random match probability was one in [insert astronomical number here].

That testimony is simply not helpful.

### III.    Cited Precedent does not support the government's motion

The government cites *Williams v. Illinois*, 567 U.S. 50 (2012) in support of its motion. (ECF No. 91 at 6-7). The government's discussion ignores several important facts. First, in *Williams*, the testifying witness had been involved in the processing of the buccal swabs from the suspect, but had not been involved in the processing of the swabs from the rape kit. Thus, the witness had some personal knowledge about the DNA processing. Moreover, the processing of the swabs from the rape

kit was done before there was a suspect. Therefore, the testimonial nature of the processing of the rape kit was eliminated, since it was not done with the purpose of aiding a prosecution. In this case, however, Garfinkle was not involved in any of the seven steps of DNA processing regarding either sample. Moreover, both samples were sent to the lab long after Mr. Henry had been identified as the suspect for prosecution. Thus, the processing of DNA for both the buccal swabs and the firearm was testimonial, since it was performed in order to further the prosecution of Mr. Henry.

Second, the *Williams* Court, in discussing the fact that the evidence regarding testing was not admitted for the truth of the matter asserted, relied heavily on the fact that Williams had a bench trial, and not a jury trial. Thus, the *Williams* Court confidently presumed that the judge understood that the evidence regarding procedures and DNA processing was not admitted for truth, but for the basis of the expert's opinion. Mr. Henry, on the other hand, is being tried before a jury. The confidence of proper compartmentalization of evidence by a judge in *Williams* is thus absent here. Telling the jury that evidence regarding the seven steps of DNA processing is admitted only as a basis for Garfinkle's opinion, but the jury should not consider whether it is actually true, will undoubtedly confuse the jury.

The government cites *United States v. Summers*, 666 F.3d 192 (4th Cir. 2011) in support of its motion for reconsideration. (ECF No. 91 at 3). Several factors bear mention. *Summers* pre-dates *Williams*, and thus is of dubious value. Second, *Summers* relies in significant part on *United States v. Turner*, 591 F.3d 928 (7th Cir. 2010). (*See Summers*, 666 F.3d at 202). That *Turner* decision was subsequently reversed by Supreme Court and remanded for reconsideration in light of *Williams*. Subsequently, an *en banc* Seventh Circuit determined that, based on *Williams*, admitting a testifying witness's statements about (1) the actual process followed by the non-testifying witness and (2) the non-testifying witness's conclusions, it appeared that the Confrontation Clause had been violated. *United States v. Turner*, 709 F.3d 1187, 1194 (7th Cir. 2013). Nonetheless, the Court ultimately found the

error harmless beyond a reasonable doubt. *Id.* at 1197. The *Turner* Court also noted that the Confrontation issues present were stronger than in *Williams* because the DNA profile generated in *Turner* was performed after he was identified as a suspect (as was done with the instant DNA profiles here) and Turner's case was tried to a jury (as is done here). *Turner, supra*, at 1192-93. *United States v. Turner*, 709 F.3d 1187, 1194 (7th Cir. 2013) thus provides strong support for the Court's ruling that Garfinkle's testimony should be excluded.[1]

### IV.    Conclusion

The government has failed to prove that the Court's ruling excluding Garfinkle's testimony was legally erroneous. Admitting her testimony without supporting testimony from the laboratory personnel who actually performed it would deprive Mr. Henry of his constitutional Confrontation Clause right to confront testimonial hearsay. The government's motion must be denied.

Dated:  May 5, 2021

Respectfully submitted,

s/Melanie Lark Turnbull
MELANIE LARK TURNBULL
Asst. Federal Public Defender
1336 Beltjen Road, Suite 202
St. Thomas, VI 00802
Tel: (340) 774-4449
Fax: (340) 776-7683
E-mail:  melanie_turnbull@fd.org

---

[1]  Admittedly, the *Turner* Court ultimately found the Confrontation violation harmless beyond a reasonable doubt. But that was a decision of the Circuit Court on appeal. This Court should not countenance a Confrontation Clause violation in the hope that an appellate court will eventually find that violation harmless beyond a reasonable doubt.